# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| GWINNETT COUNTY NAACP, as an organization; GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; and GEORGIA COALITION FOR THE PEOPLES' AGENDA, INC., as an organization;<br><br>       Plaintiffs,<br><br>v.<br><br>GWINNETT COUNTY BOARD OF REGISTRATION AND ELECTIONS; JOHN MANGANO, STEPHEN DAY, BEN SATTERFIELD, BEAUTY BALDWIN, and ALICE O'LENICK in their official capacities as members of the Board of Registration and Elections; BEN KU, MARLENE FOSQUE, TOMMY HUNTER, CHARLOTTE NASH, AND JACE BROOKS, in their official capacities as Gwinnett County Commissioners;<br><br>       Defendants. | Civil Action<br>Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**EXPEDITED TREATMENT REQUESTED**<br><br>**First and Fourteenth Amendments to the United States Constitution** |

## INTRODUCTION

1.     This action seeks to prevent the Gwinnett County Board of Commissioners and the Gwinnett County Board of Registration and Elections ("BORE") from eliminating the first week of early voting at satellite locations in the upcoming March 2020 presidential primary election.

2.     A bipartisan majority of the Gwinnett County BORE supports restoring the first week of early voting at the satellite locations for the March 2020 primary election.  *See* Arielle Kass, *Gwinnett elections board has bipartisan support for more early voting*, The Atlanta Journal-Constitution, Feb. 21, 2020, *available at*  https://www.ajc.com/news/local/gwinnett-won-expand-early-voting-requested-elections-board/hoTkZvc1H60lgupBfTPjMI/.

3.     If early voting at the satellite early voting locations is not restored, an unfortunate history will repeat itself and voters will be severely burdened and potentially disenfranchised in the March 2020 primary election.

4.     Gwinnett County voters have repeatedly confronted long lines and waits on the first day of early voting when satellite locations are not open.  In both the 2018 and 2016 general elections, hundreds of voters endured waiting periods of

2

four hours or longer.  Some voters even collapsed while waiting in line outside in extreme weather conditions to exercise their constitutional right to vote.

5.     Defendants Gwinnett County BORE, and the Gwinnett County Board of Commissioners do not have a legitimate reason to withhold the first week of satellite early voting, which is reflected in their shifting rationales and misrepresentations regarding the reasoning for walking back the initial decision to open the satellite locations for all three weeks, beginning on Monday, March 2.

6.     Instead of responding to the demonstrated needs of Gwinnett County voters, officials have resorted to finger pointing.  The Gwinnett BORE says it could operate the satellite locations but blames a lack of funding.  Meanwhile, the Board of Commissioners say the money is available in a contingency fund, but asserts vague-defined implementation concerns that do not withstand any scrutiny.

7.     Voters should not have to endure these burdens to exercise their right to access the franchise, particularly when additional locations are available and sought on a bipartisan basis by the Gwinnett County BORE.  For the upcoming March 2020 presidential primary, satellite locations were scheduled to open on Monday, March 2.

3

8.     Without relief, many eligible prospective voters will face the long lines, delays, and potential disenfranchisement that burdened early voting in Gwinnett County in 2016 and 2018.

## JURISDICTION & VENUE

9.     This Court has jurisdiction of this action pursuant to (1) 28 U.S.C. § 1343(a), because this action seeks to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the United States Constitution; and (2) 28 U.S.C. § 1331, because this action arises under the laws of the United States.

10.     This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

12.     Plaintiff GWINNETT COUNTY NAACP ("Gwinnett NAACP") is a non-partisan, interracial, nonprofit membership organization.  Its mission is to secure the political, educational, social, and economic equality of rights in order to

4

eliminate race-based discrimination and ensure the health and well-being of all persons. The Gwinnett NAACP has committed, and continues to commit time and resources to get out the vote efforts aimed at increasing voter participation. These include voter registration drives, outreach to underserved communities, and voter education and engagement efforts. The Gwinnett County NAACP's leadership has advocated for the adoption and implementation of procedures and practices that enhance voter access in Gwinnett County, including at the Gwinnett County Board of Registration and Elections' meeting held in January and February of 2020. Gwinnett County's decision not to provide for the first week of satellite early voting will require the Gwinnett County NAACP to divert resources to educate voters about the change in plans. The organization is already working on preparing and disseminating updated information to voters, and is planning to engage in increased outreach to ensure voters are adequately informed that satellite early voting locations will be unavailable during the week of March 2, 2020. The cutbacks have caused the Gwinnett County NAACP to reconsider its poll monitor staffing plans for the March 2020 primary election in Gwinnett County. The Gwinnett County NAACP is diverting resources to focus on

5

recruitment of additional volunteers to work at the Gwinnett Voter Registration office during the first week of satellite early voting.

13.  Plaintiff GEORGIA STATE CONFERENCE OF THE NAACP ("Georgia NAACP") is a non-partisan, interracial, nonprofit membership organization.  Its mission is to eliminate racial discrimination through democratic processes and ensure the equal political, educational, social, and economic rights of all persons, in particular African-Americans.  The Georgia NAACP works to protect voting rights through litigation, advocacy, legislation, communication, and outreach, including get out the vote efforts and election protection.  The Georgia NAACP has been conducting voter education efforts in Gwinnett County for the March 2020 primary election and encouraging voters to cast ballots early.  Until January 21, 2019, the Georgia NAACP had relied on representations by the Gwinnett BORE that satellite early voting locations would be open for all three weeks of the early voting period for the March 2020 primary election.  With the changes to the early voting program announced by Gwinnett County on January 21, 2019, the Georgia NAACP will have to revise its voter education materials for the March 2020 primary election on short notice.  It is also preparing to divert

6

resources to assist voters impacted by the absence of the satellite locations and long lines at the Lawrenceville location.

14.   Plaintiff THE GEORGIA COALITION FOR THE PEOPLES' AGENDA, INC. ("GCPA") is a Georgia nonprofit corporation with its principal place of business located in Atlanta, Georgia.  The GCPA is a coalition of more than 30 organizations, which collectively have more than 5,000 individual members.   The organization encourages voter registration and participation, particularly among minority and low-income citizens.   The GCPA's support of voting rights is central to its mission.   The organization has committed, and continues to commit, time and resources to conducting voter education, Souls to the Polls, and other GOTV efforts in Gwinnett County that seek to encourage turnout.  During the early voting period for the March 2020 primary, the GCPA will be offering voters transportation to polling places in several counties across the state, including in Gwinnett.  The GCPA has a van and a driver on call to transport these voters to and from Gwinnett County early voting locations.  During the first week of early voting, that van and driver will be available to transport voters to the county's sole early voting location, the Gwinnett Voter Registration and Elections Office.  The GCPA is planning on assigning poll monitors at the

7

Gwinnett Elections Office to troubleshoot problems voters might encounter and to encourage voters to stay in long lines by engaging with voters and providing water to individuals who are experiencing physical difficulties with the wait.  The GCPA will have to expend additional resources on its get out the vote efforts to account for the cutbacks to early voting in Gwinnett County by educating voters about the changes to early voting and expending additional resources to transport voters to and from the polls.

15.    Defendants CHARLOTTE J. NASH (Chairman), JACE BROOKS, (District 1), BEN KU (District 2), TOMMY HUNTER (District 3), and MARLENE M. FOSQUE (District 4) are members of the Board of Commissioners, and are being sued in their official capacities.  As Gwinnett County Commissioners, they are responsible for adopting the county's budget and authorizing expenditures, providing the necessary tools for the BORE to run state and federal elections in which citizens who are residents of the county and eligible voters may cast a ballot.

16.    Defendant GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS ("BORE") is responsible for the administration of elections in Gwinnett County, as provided by Georgia state law.  O.C.G.A. § 21-2-40.

8

17.     Defendants JOHN MANGANO, STEPHEN DAY, ALICE O'LENICK, BEAUTY BALDWIN, and BEN SATTERFIELD, ("BORE Members") are members of the BORE, and are being sued in their official capacities.  The BORE members  have the authority to exercise the powers and duties of a county election superintendent with respect to conducting elections in Gwinnett County, see O.C.G.A.  § 21–2–70 *et. seq*.  Duties of a county election superintendent include, among others, the following: (i) "To select and equip polling places for use in primaries and elections in accordance with [the Georgia Election Code]," O.C.G.A. § 21–2–70(4); and (ii) "To make and issue such rules, regulations, and instructions, consistent with law, including the rules and regulations promulgated by the State Election Board, as he or she may deem necessary for the guidance of poll officers, custodians, and electors in primaries and elections," *id.*  § 21–2–70(7).

## STATEMENT OF FACTS & LAW

18.     Under Georgia law, in person early voting must begin "[o]n the fourth Monday immediately prior to each primary or election," which must continue until "the Friday immediately prior to each primary, election, or runoff."  O.C.G.A.  § 21-2-385(d)(1).   Georgia law requires that early voting be conducted during

business hours and on the second Saturday before the election and further provides that counties "may extend the hours for voting beyond regular business hours and may provide for additional voting locations. . . to suit the needs of the electors of the jurisdiction at their option." *Id*. § 21-2-385(d)(1)(D).

19.    Gwinnett County is one of the fastest growing counties in the country in terms of population growth.  As of February 1, 2020, Gwinnett County had 557,837 active registered voters, according to the Georgia Secretary of State's office.

20.    Officials representing Gwinnett County's school district recently acknowledged that Gwinnett County's demographic changes have been rapid and profound.

21.    Despite its burgeoning population, Gwinnett County has chosen to employ an early voting scheme in which it provides for all three weeks of early voting at a single location, the Gwinnett County Voter Registration and Elections Office in Lawrenceville, while operating satellite early voting locations during the second and third week of early voting.

22.    In 2018, Gwinnett County operated seven satellite early voting locations for the last two weeks of early voting.  In 2016, Gwinnett County

10

operated two satellite early voting locations for the last two weeks of early voting, and a total of seven satellite locations for the last week of early voting.

23.     During the first week of early voting in elections in 2016 and 2018, the Gwinnett Voter Registration and Elections Office was the only early voting location that was open.  The results were disastrous.

24.     On the first day of early voting for the 2016 general election, more than 400 people lined up to exercise their right to vote at BORE headquarters, the only location offering early voting opportunities that day.

25.     Voters that day had to wait as long as five hours in order to cast their ballots.

26.     As a result of these long lines, some voters were unable to make their voices heard.  At least three people waiting in line collapsed after being exposed to temperatures outside for too long.

27.     Other voters, who arrived later in the day, left before being able to vote because they faced a three-and-a-half-hour wait.

28.     Even once BORE opened some satellite voting locations, later that week, voters faced long waits to make their voices heard.  Local reports indicate that many voters waited an hour or more.

29.    In October of 2016, recognizing that demand for early voting during the first week far exceeded the capacity of the single available early voting poll site, the Gwinnett County Commissioners approved opening additional satellite locations to help address long lines at the polls.  Commissioners Jace Brooks and Charlotte Nash testified in depositions that opening the satellite locations helped to ameliorate the problems that occurred during the first week of early voting. Exhibit 5, Transcript of the Deposition of Charlotte Nash, *Ga. State Conf. of the NAACP v. Gwinnett Cty.*, No. 1:16-cv-02852-AT, Doc. 324, at 269:8-19, 270:17-6 (confirming that "we did add additional locations once we saw how long the lines were" in October of 2016); Exhibit 6, Transcript of the Deposition of Jace Brooks, *Ga. State Conf. of the NAACP v. Gwinnett Cty.*, No. 1:16-cv-02852-AT, Doc. 321, at 234:19-235:8.

30.    The early voting period prior to the 2018 general election also saw voters endure long waits to cast their ballots.  With one week of early voting remaining, former County Election Supervisor Lynn Ledlford stated that some voters had to wait as long as one hour and fifteen minutes, and projected that wait times would increase as Election Day approached.  Advance Voting in Gwinnett Continues         Through         Nov.         2,         *available         at*

12

https://www.gwinnettcounty.com/web/gwinnett/newsandevents/newsdetails?news

=PressReleases/AdvanceVoting_102618; *Gwinnett County Early Voting wait times*

*posted*,   Fox   5   Atlanta,   Oct.   16,   2018,   *available   at*

https://www.fox5atlanta.com/news/gwinnett-county-early-voting-wait-times-

posted.

31.    These instances of multiple-hour waits have imposed a severe and

discriminatory burden on voters who seek only to exercise their constitutional

rights.  Even worse, the waits have caused some voters to collapse on account of

extreme weather conditions.  Tony Thomas et al., *Some wait several hours as early*

*voting   begins   in   Georgia*,   WSB-TV,   Oct.   17,   2016,   *available   at*

https://www.wsbtv.com/news/politics/early-voting-begins-across-

state/458139151/.

32.    Following a multi-year public campaign by the NAACP, minority

community leaders, and elected officials, in August 2019, the Gwinnett BORE

made a budget request to the Gwinnett County Board of Commissioners for funds

to open satellite locations throughout the three week early voting period for all

elections in 2019.  Amanda C. Coyne, *Gwinnett voters could get an extra week of*

*early voting in 2020*, The Atlanta Journal-Constitution, Aug. 28, 2019, *available at*

https://www.ajc.com/news/local/gwinnett-voters-could-get-extra-week-early-voting-2020/HyxDtTqZWxDEZCfeMhKdjP/.

33.     The Gwinnett BORE's August 2019 budget request provided for the first week of early voting at satellite locations for the upcoming March 2020 primary election.

34.     Under the Board's proposal, satellite locations would have been open for all three weeks of early voting, including Saturdays and Sundays, and they would have been open from 7 am to 7 pm each day.

35.     On November 18, 2019, Elections Supervisor Kristi Royston sent an email to all of the members of the Gwinnett County Board of Registration and Elections indicating that there would be three weeks of early voting at the satellite locations under the 2020 budget proposal.

36.     The Gwinnett County Board of Commissioners approved the budget for the BORE on January 7, 2020.  They provided for the additional money required to open the satellite early voting locations but placed it in a contingency fund.  County officials did not inform the Gwinnett BORE of the budgetary maneuver.

37.     At the January 21, 2020 BORE meeting, Elections Supervisor Kristi Royston announced, on behalf of the BORE, that early voting would be reduced from 19 days to 12 days at satellite locations for the March 2020 primary.   To support her announcement, Supervisor Royston explained that a voting-machine vendor delay meant cutting time was necessary.   Earlier that day, Supervisor Royston learned from a BORE employee that their voting-machine vendor, Dominion Voting, was experiencing delays.

38.     Just two days later, despite securing funds to operate early voting at satellite locations, BORE officials publicly claimed budget cuts necessitated eliminating first-week early voting at satellite locations.   Exhibit D, Arielle Kass, *Gwinnett Won't Expand Early Voting as Requested by Elections Board*, Atlanta Journal-Constitution, Jan. 23 2020.

39.     Documents produced following public records requests reveal that vendor delays in delivering new voting machines and attendant implementation-related complications were the primary considerations motivating the decision to eliminate the first week of early voting at satellite locations and impermissibly burden citizens' fundamental right to vote.

15

40.     Commission Chairperson Charlotte Nash stated in a January 22nd email that "funding is not what the decision turns on," that "the real issue is logistics of ensuring best probability of managing election [sic] properly," and that "staff questions the ability to handle more satellite locations for the first week of AIP voting with all the other tasks that must be done in the short time frame after delivery of equipment."  Indeed, in a January 29th email Chairperson Nash again confirmed that the decision was based on "logistical challenges such as poll worker fatigue over the year," (2) that "we still did not have voting equipment other than two demo sets," and "the reality of the compressed time frame."

41.     Tina Fleming, Gwinnett County Director of the Office of Community Services, stated in a January 22 email that "[s]taff questions the ability to increase satellite hours… for the first week of AIP voting at the 7 satellites, due to logistics with equipment, training staff and managing elections properly."

42.     At the time, Dominion was far behind schedule in delivering the new voting machines to the Gwinnett BORE.  However, as of February 24, 2020, the BORE had received 2,247 of the 2,255 new voting machines required for the March primary.

16

43.     Even if the new machines had never arrived, the Gwinnett BORE, should have been prepared to conduct early voting at the satellite locations.  On August 15, 2019, the Honorable Judge Amy Totenberg ordered state election officials to develop a "default back-up plan" involving the use of paper ballots that "addresses the contingency that the new BMD system enacted by the State Legislature may not be completely rolled out and ready for operation" at the time of the March 2020 elections.  *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1410 (N.D. Ga. 2019).  The Georgia State Election Board promulgated appropriate rules.  *See* SEB Rule 183-1-12.01(2).  Pursuant to those rules, if the Gwinnett BORE is not prepared to administer early voting at satellite locations using the new voting machines, it must administer early voting using paper ballots.

## COUNT I
### Violation of the Fundamental Right to Vote
### 42 U.S.C. § 1983, First and Fourteenth Amendments to the U.S. Constitution

44.     Plaintiffs re-allege the allegations set forth in the paragraphs above as though fully set forth herein.

45.     Defendants, Gwinnett BORE and its members, acting under color of state law, have eliminated the first week of early voting at satellite locations for the March 2020 primary election that was included in the Gwinnett BORE's 2019

budget request.  Defendants Gwinnett County Board of Commissioners contributed to this decision, by arbitrarily placing money for satellite locations in a contingency funds.  Unless enjoined, the failure to open the satellite locations during the first week of early voting will result in extreme burdens on the fundamental right to vote in the March 2020 primary election and potential disenfranchisement.

46.    In 2016 and 2018, the Gwinnett BORE operated one early voting location during the first week of early voting and the results were disastrous. Extraordinarily long lines developed at the Gwinnett Voter Registration and Elections Office with wait times extending as long as five hours.  These conditions resulted in three voters collapsing as they waited outdoors. These burdens are indisputably severe and are very likely to recur in the March 2020 primary election.  Turnout is expected to be high and early voting is increasing in popularity in Gwinnett County as evidenced by turnout patterns from past elections. Voters will undoubtedly suffer a severe burden on their fundamental right to vote, guaranteed by the First and Fourteenth Amendments, if BORE does not operate satellite locations throughout the upcoming early voting period.

601712240.1

47.     Voters' burden will also be discriminatory, as Gwinnett County has many Black residents who depend upon the flexibility early voting affords them. County residents of a lower socioeconomic status will also suffer; inflexible work schedules, a need for childcare and the challenge of finding means to travel make their need for flexibility particularly acute.

48.     This severe and discriminatory burden requires heightened scrutiny. However, the BORE's decision to eliminate the first week of early voting at satellite locations could not pass muster even under the most lenient level of scrutiny. scrutiny.

49.     County officials have known for years that there were long lines during early voting, as Commissioners Hunter, Nash, and Brooks have testified to in depositions. Commissioners Nash and Brooks testified that they knew opening additional early voting locations ameliorated the problems with long lines and voter hardship and disenfranchisement.

50.     Rather than address this issue, county officials have devolved into a blame game.  The Gwinnett BORE blames the county budget for cutbacks to the early voting program, an excuse that has proven to be a sham because the Board of Commissioners approved the funding and placed it in a contingency fund.

Meanwhile, the Commissioners assert the funding is available and instead blame the BORE's inability to implement the additional week of early voting at the satellite locations.

51.     It is not a legitimate justification to cite problems stemming from the delayed delivery of voting machines as an excuse.   The state has already promulgated rules requiring the use of paper ballots, in compliance with Judge Totenberg's order.  Pursuant to those rules, if the Gwinnett BORE is not prepared to administer early voting at satellite locations using the new voting machines, they must do so using paper ballots, with appropriate options for voters who are unable to mark ballots by hand.

52.     Plaintiffs are without an adequate remedy at law unless this Court grants the relief requested and orders the BORE to open satellite locations during the first week of early voting.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that the Court:

1.     Enter judgment in favor of the Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint:

2.      Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the BORE's decision to no longer offer three weeks of early voting at satellite locations violates the fundamental right to vote under the First and Fourteenth Amendments.

3.      Grant Plaintiffs preliminary or permanent injunctive relief by ordering that:

      a.      Defendants BORE and its members reinstate the first week of early voting at the seven satellite locations in Gwinnett County for the March 2020 primary election;

      b.      Defendant members of the Gwinnett County Board of Commissioners release the necessary money from Gwinnett County's 2020 contingency fund for the additional week of early voting at the satellite locations for the March 2020 primary election;

      c.      Defendants BORE and its members, and Defendant members of the Gwinnett County Board of Commissioners post notice of the additional early voting opportunities prominently on the Gwinnett County and Gwinnett BORE's websites and inform media outlets of

601712240.1

the same by issuing a press release and employing other available means;

d.       Defendants BORE and its members provide for a sufficient number of paper ballots at all early voting locations so that voting can continue in the event voting machines are unavailable or become inoperable during the first week of early voting.

4.       Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute;

5.       Retain jurisdiction over this action to ensure that Defendants comply with any order(s) issued by this Court; and

6.       Grant Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted this 27th day of February, 2020.

By:    /s/ *__Jennifer Dempsey__*
                Georgia Bar No. 217536
                Julia Fenwick Ost
                Georgia Bar No. 940532
                Bryan Cave Leighton Paisner LLP
                1201 West Peachtree Street
                Atlanta, Georgia 30309-3488
                Telephone: (404) 572-6600
                Email:  jennifer.dempsey@bclplaw.com

**Ezra Rosenberg**
Attorney for Plaintiffs
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
Email: erosenberg@lawyerscommittee.org

**Julie Houk**
Attorney for Plaintiffs
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8391
Email:  jhouk@lawyerscommittee.org

**John Powers**
Attorney for Plaintiffs
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8389
Email:  jpowers@lawyerscommittee.org

*Counsel for Plaintiffs*

601712240.1