**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

GWINNETT COUNTY NAACP, as an organization; GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; and GEORGIA COALITION FOR THE PEOPLES' AGENDA, INC., as an organization;

Plaintiffs,

v.

GWINNETT COUNTY BOARD OF REGISTRATION AND ELECTIONS; JOHN MANGANO, STEPHEN DAY, BEN SATTERFIELD, BEAUTY BALDWIN, and ALICE O'LENICK in their official capacities as members of the Board of Registration and Elections; GWINNETT COUNTY, GEORGIA; BEN KU, MARLENE FOSQUE, TOMMY HUNTER, CHARLOTTE NASH, AND JACE BROOKS, in their official capacities as Gwinnett County Commissioners;

Defendants.

Civil Action
Case No. ___________________

**EXPEDITED TREATMENT REQUESTED**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED TREATMENT

# I. PRELIMINARY STATEMENT

This motion seeks very targeted emergency relief to prevent Gwinnett County citizens from needlessly being forced to wait for hours in extraordinarily long lines at the only polling site, the Gwinnett County Voter Registration and Elections Office, that will be open during the first week of early voting from March 2 through March 8, 2020. In 2016 and 2018, hundreds of voters waited in line outside that office for approximately four hours during the first week of early voting. At least three voters collapsed outside the office in 2016, and other voters reported leaving the line without voting. Voters should not have to endure these burdens to exercise their right to vote, particularly when additional locations are available and sought on a bipartisan basis by the board of elections.

Defendant Gwinnett County Board of Registration and Elections (BORE) has already asked Defendants on the Board of Commissioners to open the seven satellite voting sites that are being used for the second and third weeks of early voting for the first week. BORE Defendants implicitly acknowledge that these sites are needed, having passed a budget request in 2019 asking the Board of Commissioners to provide enough funding to operate the satellite locations for the first week of early voting for the March primary election. The Commissioners approved a budget providing that money in a "contingency fund," which the

county's Chief Financial Officer and Commissioner Chair have each stated is accessible to the BORE. Republican and Democratic members on the BORE agree that they want to operate seven satellite locations but incorrectly assert that they cannot open any of them because of the Commissioners' funding decisions.

There is an easy fix: the Commissioners release the funding from the contingency fund and the BORE open the satellite locations for the first week of the early voting period and provide for paper ballots in case there are problems with the new voting machines. Not only is this a narrowly tailored remedy, but the County has already admitted that it has the money to open the locations, and a federal judge has already ordered that election officials should make paper ballots available if Georgia's new voting machines were not ready for the March primary election. Plaintiffs Georgia State Conference of the NAACP, Gwinnett County NAACP, and the Georgia Coalition for the People's Agenda request that the Court order Defendants to provide the first week of early voting at the satellite locations.

## II. STATEMENT OF FACTS

In Georgia, in-person early voting must begin "[o]n the fourth Monday immediately prior to each primary or election," and end "the Friday immediately prior to each primary, election, or runoff." O.C.G.A. § 21-2-385(d)(1). While early voting must be conducted during business hours and on the second Saturday

before the election, counties "may extend the hours for voting beyond regular business hours and may provide for additional voting locations . . . to suit the needs of the electors of the jurisdiction at their option." *Id*. § 21-2-385(d)(1)(D).

### A. Gwinnett County and its Early Voting Plans in 2016 and 2018

Gwinnett County is one of the fastest growing counties in the country and has the second most registered voters out of Georgia's 159 counties.[1] As of February 1, 2020, Gwinnett had approximately 557,837 active registered voters, according to the Georgia Secretary of State's office.[2]

Despite its burgeoning population, the Defendants are employing a limited early voting scheme for the March 2020 primary election. Defendants will provide a single location for all three weeks of early voting, the Gwinnett County BORE Office in Lawrenceville, while operating satellite early voting locations during the second and third weeks of early voting. Defendants' provision of a single early voting location for the first week continues policies employed for elections in 2016

---

[1] *See, e.g.*, Curt Yeomans, *Gwinnett 83rd among nation's 100 fastest growing counties*, Gwinnett Daily Post, Mar. 30, 2016, *available at* https://www.gwinnettdailypost.com/local/gwinnett-rd-among-nation-s-fastest-growing-counties/article_ae403f73-8752-5a03-93bf-e29b91d9c346.html.

[2] *Active Voters by Race and Gender (By County with Statewide Totals)*, "Voter Registration Statistics," *available at* https://sos.ga.gov/index.php/Elections/voter_registration_statistics.

and 2018. In 2018, Defendants opened seven satellite locations for the last two weeks of early voting,[3] and in 2016, they operated two satellite locations for the last two weeks of early voting, and seven locations for the last week.[4]

The results of these policies have been disastrous. On the first day of early voting for the 2016 general election, a line of more than 400 people extended outside the BORE's headquarters. Voters, including County Commissioner Tommy Hunter and his daughter, waited four or more hours to vote.[5] Several voters reported leaving the line without voting,[6] and at least three people collapsed

---

[3] Amanda C. Coyne, *How to early voting for midterm elections in Gwinnett County*, The Atlanta Journal-Constitution, Sept. 18, 2018, *available at* https://www.ajc.com/news/local/how-early-vote-for-midterm-elections-gwinnett-county/Q9UuwNE0u8RKMsg9uqFfAM/.

[4] Tyler Estep, *Where (and when) to vote early in Gwinnett*, The Atlanta Journal-Constitution, Oct. 24, 2016, *available at* https://www.ajc.com/news/local-govt--politics/where-and-when-vote-early-gwinnett/Kw7JLLvWaxJFEMjHa5S5UJ/.

[5] Tyler Estep, *After 2016's long lines, Gwinnett may add more early voting days*, The Atlanta Journal-Constitution, Aug. 30, 2017, *available at* https://www.ajc.com/news/local-govt--politics/after-2016-long-lines-gwinnett-may-add-more-early-voting-days/KoRWDidTJmiZC94IaVcYdK/; *see also* Exhibit 4, Transcript of the Deposition of Daniel T. Hunter, *Ga. State Conf. of the NAACP v. Gwinnett Cty.*, No. 1:16-cv-02852-AT, Doc. 321, at 157:14-159:21.

[6] Erika Wells & Curt Yeomans, *Early voting continues with long lines*, Gwinnett Daily Post, Oct. 17, 2016, *available at* https://www.gwinnettdailypost.com/local/early-voting-continues-with-long-lines/article_551d9ae5-2e84-59be-bfce-94eb6a6a584d.html.

after being forced to wait in line too long.[7] There were long lines on other days during the early voting period in 2016 as well.[8] County Commissioners Jace Brooks and Charlotte Nash acknowledged that the county did not accommodate the significant demand for early voting during the first few days of the early voting period in 2016, and that the BORE needed to open additional satellite early voting locations to address the problem. *See also* Exhibit 5, Transcript of the Deposition of Charlotte Nash, *Ga. State Conf. of the NAACP v. Gwinnett Cty.*, No. 1:16-cv-02852-AT, Doc. 324, at 269:8-19, 270:17-6 (confirming that "we did add additional locations once we saw how long the lines were" in October of 2016).[9]

There were also delays during the first week of early voting prior to the November 2018 election. The line of early voters on the first day stretched out the

---

[7] Tony Thomas et al., *Some wait several hours as early voting begins in Georgia*, WSB-TV, Oct. 17, 2016, *available at* https://www.wsbtv.com/news/politics/early-voting-begins-across-state/458139151/.

[8] Tony Thomas, *Early voting in Gwinnett: Voters come out in droves on Day 2*, WSB-TV, Oct. 18, 2016, https://www.wsbtv.com/news/local/gwinnett-county/early-voting-in-gwinnett-voters-come-out-in-droves-on-day-2/458495798/; Curt Yeomans, *Big ballot awaits Gwinnett voters on Tuesday*, Gwinnett Daily Post, Nov. 5, 2016, https://www.gwinnettdailypost.com/local/big-ballot-awaits-gwinnett-voters-on-tuesday/article_59e5240b-2f54-5a4b-b4e3-bc2b5c9737a0.html.

[9] Exhibit 6, Transcript of the Deposition of Jace Brooks, *Ga. State Conf. of the NAACP v. Gwinnett Cty.*, No. 1:16-cv-02852-AT, Doc. 321, at 234:19-235:8.

door and across the street.[10] Former County Election Supervisor Lynn Ledford acknowledged that wait times in 2018 were as long as an hour and 15 minutes.[11] County officials acknowledged having record turnout during the first few days of the early voting period in 2018.[12]

**B. Early Voting Plan for 2020**

Following a multi-year public campaign by the NAACP, minority community leaders, and elected officials, in 2019 the Gwinnett County BORE made a budget request that sought additional funds specifically enabling the use of satellite locations during the first week of early voting for the 2020 primary and general elections.[13] In the fall of 2019, the BORE voted to fund all three weeks of

[10] *Gwinnett County Early Voting wait times posted*, Fox 5 Atlanta, Oct. 16, 2018, *available at* https://www.fox5atlanta.com/news/gwinnett-county-early-voting-wait-times-posted.

[11] Advance Voting in Gwinnett Continues Through Nov. 2, *available at* https://www.gwinnettcounty.com/web/gwinnett/newsandevents/newsdetails?news=PressReleases/AdvanceVoting_102618.

[12] Aungelique Proctor, *State representatives voice concerns over Gwinnett County early voting*, Fox 5 Atlanta, Oct. 18, 2018, *available at* https://www.fox5atlanta.com/news/state-representatives-voice-concerns-over-gwinnett-county-early-voting.

[13] Amanda C. Coyne, *Gwinnett voters could get an extra week of early voting in 2020*, The Atlanta Journal-Constitution, Aug. 28, 2019, *available at* https://www.ajc.com/news/local/gwinnett-voters-could-get-extra-week-early-voting-2020/HyxDtTqZWxDEZCfeMhKdjP/.

early voting at the satellite locations, which cost an additional $1.4 million. *See* Exhibit 7, Decision package confirming approval of $1.4 million in contingency funds; *see also* Exhibit 8, Day-Royston email thread with schedule combined. The BORE's budget proposal included 19 days of early voting at all seven satellite early voting locations, including Saturdays and Sundays, from 7 am to 7 pm.

At the end of the budgeting process, the Board of Commissioners' Budget Review Team placed the $1.4 million in a "General Fund Contingency." *See* Exhibit 7, Decision Package, at 10-11. The final Gwinnett County budget request was approved on January 7, 2020.[14]

At the Gwinnett County BORE meeting held on January 21, 2020, Elections Supervisor Royston informed the public that BORE would cutback early voting at satellite locations from 19 to 12 days for the March 2020 primary. *See* Exhibit 15, Minutes from the January 21, 2020 BORE meeting. As in 2016 and 2018, this early voting plan provides voters with a single location during the first week early voting at the Gwinnett County BORE Office in Lawrenceville.

---

[14] Brittany Kleinpeter, *Gwinnett Co. approves 2020 budget*, 11Alive, Jan. 10, 2020, https://www.11alive.com/article/news/local/mynews/lawrenceville/gwinnett-county-approves-budget/85-245f2e03-b6de-4a40-9fbd-db062afd16e7.

BORE members were not informed of the decision to place the money in the contingency fund until the Gwinnett County BORE meeting held on January 21, 2020. Exhibit 9, January 29 from Charlotte Nash regarding contingency fund; Exhibit 10, January 22 email from Marlene Fosque. At the January 21 meeting, Supervisor Royston cited the delayed arrival of the voting machines and the need to ensure that election officials were properly trained to operate the new voting machines as the reasons for the cuts. *See* Arielle Kass, *Gwinnett won't expand early voting as requested by elections board*, The Atlanta Journal-Constitution, Jan. 23, 2020, *available at* https://www.ajc.com/news/local/gwinnett-won-expand-early-voting-requested-elections-board/hoTkZvc1H60lgupBfTPjMI/. Indeed, earlier on January 21, a representative of Dominion Voting (the voting-machine vendor) had informed Assistant Elections Supervisor Kelvin Williams that Gwinnett County's delivery of voting machines would not begin on January 24 and was being moved back to January 30. *See* Exhibit 11, Email thread involving Kelvin Williams, Jan. 21, 2020.

These revelations triggered controversy with the BORE members and amongst the public. After the meeting, Plaintiffs sent Defendants the first of two letters objecting to the early-voting cuts, explaining that the decision would adversely impact the right to vote and result in disenfranchisement. *See* Exhibit

12, Letters from Plaintiffs, Feb. 18, 2020 & Jan. 22, 2020. Plaintiffs explained why these early-voting cuts raise concerns under the U.S. Constitution. *See id*.

In response to media inquiries, Gwinnett County officials incorrectly asserted that early voting hours were cut because "county commissioners didn't pay for it." *See* Arielle Kass, *Gwinnett won't expand early voting as requested by elections board*, The Atlanta Journal-Constitution, Jan. 23, 2020, *available at* https://www.ajc.com/news/local/gwinnett-won-expand-early-voting-requested-elections-board/hoTkZvc1H60lgupBfTPjMI/; see also Exhibit 10, Email from Marlene Fosque dated January 22, 2020.

Despite these representations, Gwinnett County officials have repeatedly made statements indicating they were motivated by other considerations during the relevant period. For example, during her presentation at the January 21 Gwinnett County BORE meeting, Supervisor Royston cited voting-machine and implementation-related issues as causes but never mentioned or referenced budgetary constraints as a reason for cutting early voting from 19 days to 12 days.

That budgetary constraints were not the real reason for the proposed action is further corroborated by emails dated January 22, 2020, between Charlotte Nash, Chair of the Gwinnett County Board of Commissioners, and Tina Fleming, Director of the Office of Community Services. Chairperson Nash asks Ms.

Fleming to corroborate her understanding that "funding is not what the decision turns on," that "the real issue is logistics of ensuring best probability of managing election [sic] properly." Exhibit 13, Email thread between Charlotte Nash and Tina Fleming dated January 22, 2020. In response, Ms. Fleming confirmed this understanding, saying that "[s]taff questions the ability to increase satellite hours… for the first week of AIP voting at the 7 satellites, due to logistics with equipment, training staff and managing elections properly." *See id*.

Chair Charlotte Nash subsequently confirmed in a January 29, 2020 email that the funding for the satellite early voting locations "was set aside in Contingency and is available for use to fund decisions the Board of Commissioners may choose to make about AIP voting." Exhibit 9, January 29 from Charlotte Nash regarding contingency fund. In that email, Chairperson Nash confirmed that the decision was based on "logistical challenges such as poll worker fatigue over the year," (2) that "we still did not have voting equipment other than two demo sets," and "the reality of the compressed time frame." *See id*.

At the time the decision was made, Dominion was far behind schedule in delivering the new voting machines to Gwinnett County. However, as of February 24, 2020, Gwinnett County had received 2,247 of the 2,255 new voting machines required for the March primary. *See* Exhibit 14, Equipment Inventories as of

February 12 and February 24, 2020. Nonetheless, the BORE failed to change its stance on the first week of satellite early voting at its February meeting. *See* Exhibit 16, Unofficial minutes from the February 18, 2020 BORE meeting.

At the February 18, 2020 BORE meeting, Republican BORE member Alice O'Lenick said she thought the BORE's decision to fund the first week of satellite early voting should be restored for the March 2020 primary election; Democrat Stephen Day agreed. *See* Arielle Kass, *Gwinnett elections board has bipartisan support for more early voting*, The Atlanta Journal-Constitution, Feb. 21, 2020, *available at* https://www.ajc.com/news/local/gwinnett-won-expand-early-voting-requested-elections-board/hoTkZvc1H60lgupBfTPjMI/.

Gwinnett County officials should be prepared to conduct early voting at the satellite locations, even if there are issues with the new voting machines. On August 15, 2019, the Honorable Judge Amy Totenberg ordered state officials to develop a "default back-up plan" involving the use of paper ballots that "addresses the contingency that the new BMD system enacted by the State Legislature may not be completely rolled out and ready for operation" at the time of the March 2020 elections. *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1410 (N.D. Ga. 2019). The State Election Board promulgated appropriate rules. *See* SEB Rule 183-1-12.01(2). Pursuant to those rules, if Gwinnett County is not prepared to

administer early voting at satellite locations using the new machines, they must do so using paper ballots, with options for voters who cannot mark ballots by hand.

## III. ARGUMENT

To prevail on a motion for a preliminary injunction, Plaintiffs must show: (1) a substantial likelihood that they will succeed on the merits; (2) the preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury absent an injunction outweighs the injury an injunction may impose on Defendant; and (4) the injunction would not be adverse to the public interest. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010).

### A. The Organizational Plaintiffs Have Standing.

Organizations engaged in get out the vote activities have standing to sue when a defendant illegally impairs those activities, forcing the organization to divert time, money and staff resources to educate and assist impacted voters. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014); *see also Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350-51 (11th Cir. 2009) (Georgia NAACP has standing to challenge photo ID statute because it needed to divert resources to educate and assist voters); *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1165-66 (11th Cir. 2008); *Ga. Coalition for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1258 (N.D. Ga. 2018) (Georgia NAACP and GCPA have

standing based on diversion of resources). Here, Plaintiffs Gwinnett County NAACP, Georgia NAACP, and GCPA participate in get out the vote activities and must divert resources to educate voters about the late cutback to the early voting program, and recruit and hire more staff to assist voters standing in long lines. *See, e.g.*, Declaration of Helen Butler ¶¶ 16–18, Exhibit 1; Declaration of Penny Poole ¶¶ 18-21, Exhibit 2; Declaration of James Woodall ¶¶ 11-12, Exhibit 3.

The Georgia NAACP and the Gwinnett County NAACP also have associational standing. An organizational plaintiff has associational standing "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). An organization needs to establish only "that at least one member faces a realistic danger of [injury]." *Browning*, 522 F.3d at 1163. This is particularly true for organizations with high membership rates. *See Arcia*, 772 F.3d at 1342 (citing *Browning*, 522 F.3d at 1163). Here, the Georgia NAACP and the Gwinnett County NAACP have members in Gwinnett County who are registered voters and will be directly disadvantaged by the Defendants' actions because they will have to stand in long lines outdoors and are at risk of being

turned away without voting during the first week of early voting. Poole Decl. ¶ 4, Ex. 2; Woodall Decl. ¶ 6, Ex. 3.

### B. <u>Plaintiffs are Substantially Likely to Succeed on the Merits</u>

The right to vote "is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citation omitted). Creating a "second class of voters" by subjecting an identifiable group of voters to heightened burdens is "constitutionally untenable." *League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1217 (N.D. Fla. 2018). Accordingly, courts have developed a balancing test to prevent unjustified burdens on the right to vote. Here, forcing persons to wait in extraordinarily long lines outdoors and risk not being able to vote at all at Gwinnett County's only location during the first week of early voting fails on both ends of the scale.

#### *1. The Anderson-Burdick Test*

A State may not place any burdens on the right to vote that are not adequately justified by the State's asserted interests. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick*, 504 U.S. 428. When considering challenges to state election laws that impact the fundamental right to vote, courts must "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as

justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Anderson*, 460 U.S. at 789. The *Anderson-Burdick* framework is a "flexible" sliding scale, in which the "rigorousness of [the court's] inquiry" increases with the severity of the burden. *Burdick*, 504 U.S. at 434. When a state imposes a severe burden, strict scrutiny applies and any burdensome action must be narrowly tailored to advance a compelling state interest. *See id*. Plaintiffs need not demonstrate discriminatory intent. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1321 (11th Cir. 2019).

An election regulation constitutes a "severe" restriction on the fundamental right to vote when that regulation "categorically" burdens the ability of an identifiable class of voters to take actions necessary to vote successfully. *See, e.g.*, *League of Women Voters of Fla.*, 314 F. Supp. at 3d 1219. Even where the burden is not "severe" enough to warrant strict scrutiny, courts weighing the burden on voters against the state's interest will look to the "precision" with which the state's interests are advanced by the burdensome regulation.[15] *Burdick*, 504 U.S. at 434.

[15] *League of Women Voters of Fla.*, 314 F. Supp. 3d at 1216 (holding that the regulation failed the *Anderson-Burdick* test "because it disparately impose[d]

2. *Gwinnett County's Decision to Provide For One Early Voting Location Severely Burdens the Fundamental Right to Vote.*

Evidence from the 2016 and 2018 elections, in which Gwinnett also employed a single early voting location for the first week of early voting, proves that Gwinnett County's plan for the first week of early voting for the March 2020 primary election will inevitably lead to exceptionally long lines and strain voters who wish to exercise their right to vote.

As described in detail above, *see* Section II(C), *supra*, Defendants, including Commissioners Hunter, Nash, and Brooks, have admitted that Gwinnett County voters who appeared during first days of the early voting period before the 2016 and 2018 general elections had to wait in lines for four hours and an hour and fifteen minutes respectively. Voters reported leaving without voting after waiting for hours, and three voters collapsed in line due to having to wait outside in extreme weather. *Id.* These extreme burdens are far beyond voter regulations that impose an "inconvenience" on voters or are "nonsevere, nonsubstantial, or [a] slight burden." *See League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1216 (N.D. Fla. 2018).

---

significant burdens on Plaintiffs' rights weighted against imprecise, insufficiently weighty government interests").

Local conditions in Gwinnett County pose particular challenges for voters attempting to travel to Lawrenceville to vote early. Poole Decl. ¶¶ 9-10; Butler Decl. ¶¶ 11. Traffic patterns make it exceedingly difficult to travel to the BORE offices in Lawrenceville before or after work hours. Poole Decl. ¶ 9. Also, in contrast to neighboring counties, there are no rapid transit options in Gwinnett, and travel over long distances is difficult for many voters. Poole Decl. ¶ 10.

Moreover, this burden impacts a large class of Gwinnett County voters. Not only are there more than 550,000 active voters in Gwinnett County, but the use of in person early voting is increasing rapidly, particularly during presidential years. There were 22,511 in-person early voters during the 2016 presidential primary election, 11,233 of whom voted during the first week of the early voting period; by contrast, in 2012, there were a total of 8,324 in-person early voters, of whom 2,257 voted during the first week.[16] Such a burden on a large class of voters cannot be justified in the absence of sufficiently weighty or important regulatory interest as required under the *Anderson-Burdick* balancing test. *League of Women Voters of Fla.*, 314 F. Supp. 3d at 1220–21.

---

[16] *See* Election Results 2008-2019, *available at* https://www.gwinnettcounty.com/web/gwinnett/departments/elections/electionresults.

The serious risk that these burdens may occur is more than sufficient to establish a sufficient likelihood of success under existing case law; Plaintiffs need not prove the impact with absolute certainty. *See Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1402 (N.D. Ga. 2019) (finding likelihood of success based on evidence that Georgia's former "voting system, as implemented, burdens and deprives them of their rights to cast secure votes that are reliably counted."); *Ga. Coalition for the Peoples' Agenda, Inc., v. Deal*, 214 F. Supp. 3d 1344, 1345–46 (S.D. Ga. 2016).

Further, "[d]isparate impact matters" when evaluating the burden under the *Anderson-Burdick* test. *League of Women Voters of Fla.*, 314 F. Supp. 3d at 1216–17 ("A majority of the *Crawford* Court determined that "[i]t 'matters' in the *Anderson-Burdick* analysis ... whether the effects of a facially neutral and nondiscriminatory law are unevenly distributed across identifiable groups."); *see also Common Cause Ind. v. Marion Cty. Election Bd.*, 311 F. Supp. 3d 949, 968 & n.18 (S.D. Ind. 2018) (identifying the six-justice *Crawford* majority). Here, the burdens of eliminating the first week of voting at satellite early voting locations hit Gwinnett County's minority and most vulnerable residents the hardest.

Voters in Gwinnett County who cannot vote on Election Day or during other parts of the early voting period are at risk of disenfranchisement. Butler Decl.

¶ 11. Gwinnett County's early voting plan imposes a burden on voters because the county has large populations of Black and underrepresented residents, who often depend on the flexibility provided by early voting to cast their ballots. *Id.* ¶ 12. Minority voters and voters with lower socioeconomic status may experience particular difficulty going to the polls on Election Day. *Id.* ¶¶ 11, 15. This can result from, among other factors, inflexible or unusual work schedules, demands of childcare or other family obligations, and the challenge of traveling and dealing with traffic on Election Day. *Id.* ¶ 11.

Here, as in *League of Women Voters*, the constitutional problem is that early voting opportunities afforded under state law are not being administered equitably. *See id*. at 1217. "Once a unit of government has decided to administer a benefit or impose a burden, it must do so rationally and equitably, without offense to independent constitutional prohibitions." *Id*. (*citing Common Cause Ind*. *v*. *Marion Cty. Elec. Bd.*, 311 F. Supp. 3d 949 (S.D. Ind. 2018), *vacated on other grounds*, 925 F.3d 928 (7th Cir. 2019)). Defendants do not do this. Gwinnett County voters are denied a reasonable in-person early voting option during the first week, unlike voters from other counties—making them the only class in Georgia facing this barrier. *See League of Women Voters*, 314 F. Supp. at 1217.

It is not enough to say that other theoretical options for voting exist. *Veasey v. Abbott*, 830 F.3d 216, 255 (5th Cir. 2016) (en banc) (affirming district court holding "that mail-in voting is not an acceptable substitute for in-person voting"); *see also League of Women Voters*, 314 F. Supp. at 1217. Some voters, particularly those in minority communities who have suffered the effects of discrimination and voter suppression, prefer to vote in person. Butler Decl. ¶ 13. Absentee voting has a troubled history in Gwinnett County, where voters have been disenfranchised because their absentee ballot application or ballot is rejected. *Id*. ¶ 14; *see also Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018) (describing and enjoining Gwinnett County's absentee ballot rejection policies).

*3. Eliminating the First Week of Early Voting at Satellite Locations Is Not Justified by a Legitimate State Interest*

The decision to not provide for satellite early voting for the first week when BORE asked for funds to do so and the Commissioners voted to make contingency funds available does not advance any state interest and cannot pass the *Anderson-Burdick* test even under the most lenient scrutiny. *See Burdick*, 504 U.S. at 434; *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1325-26 (11th Cir. 2019). Even where a regulation creates a slight burden, the state must show that the regulation is justified by a relevant state interest. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008).

As amply demonstrated above, *see* Section II(E), *supra*, Defendants have no legitimate justification for failing to open the satellite early voting locations during the first week of early voting. They have known for years that there were long lines during early voting, as Commissioners Hunter, Nash, and Brooks have testified to in depositions; Commissioners Nash and Brooks testified that they knew opening additional early voting locations ameliorated the problems with long lines and voter hardship and disenfranchisement. *See* Exhibit 4, Hunter Dep. 157:14–159:21; Exhibit 6, Brooks Dep. 234:19–235:8; Exhibit 5, Nash Dep. 269:8-19, 270:17-6. Instead, the Gwinnett Board of Commissioners and Gwinnett BORE have resorted to finger pointing and the blame game. The BORE says the Commissioners have denied the necessary funding, which the Commissioners deny and instead blame the BORE's inability to implement the additional week of early voting at the satellite locations. *See* Section II(E), *supra*.

According to Helen Butler, it is feasible to open satellite early voting locations during some or all of the first week of early voting for the March 2020 presidential primary election. Butler Decl. ¶¶ 19-22. The Gwinnett County Board of Registration and Elections will complete its training of all poll workers before early voting begins. *Id.* ¶ 20. The Secretary of State already held a "mock election" this week to acclimatize all poll workers to the new voting equipment and

various election practices. *Id*. ¶ 21. As a result, Gwinnett County has a pool of poll workers staff early voting locations. *Id*.

Further, instead of providing for at least some additional satellite early voting, officials unnecessarily painted their decision as "all or nothing." They justified eliminating the first week at the satellite because they claimed they could not staff seven satellite locations for that week. However, with the pool of available poll workers, the County has the resources to open satellite poll sites at times of high demand during the first week. Butler Decl. ¶ 22.

### C. The Relief Requested is Appropriate and Narrowly Tailored.

To ensure Gwinnett County voters do not have to wait for hours in line, or are turned away when they attempt to vote during the first week of early voting for the March 2020 primary election. The money has already been set aside for the satellite locations. Moreover, the county is already planning on conducting early voting at seven satellite locations, has already claimed to have trained its poll workers, and has received virtually all of its new voting machines. The burden of staffing poll workers at satellite locations, particularly during the times of high demand during the first week such as Friday, Saturday, and Sunday, March 6-8, *see* Butler Decl. ¶ 22, is minimal when compared to the threat of improperly disenfranchising voters. *See United States v. Georgia*, 892 F. Supp. 2d 1367, 1377

(N.D. Ga. 2012) (holding the "potential hardships that Georgia might experience are minor when balanced against the right to vote"). Plaintiffs' proposed relief is similar to that ordered by district courts ordering counties to extend voter registration opportunities in the wake of natural disasters. *See Deal*, 214 F. Supp. 3d at 1345 (extending registration deadline even though "the extension would present some administrative difficulty"); *see also Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (2016).

**D. <u>Plaintiffs Will Suffer Irreparable Harm Absent Relief.</u>**

"[B]y finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); *see also Jones v. Governor of Florida*, 2020 WL 829347, at *25-26 (Feb. 19, 2020); *Common Cause/Ga*., 406 F. Supp. 2d at 1376 ("[T]he right to vote is a fundamental right and is preservative of all other rights. Denying an individual the right to vote works a serious, irreparable injury upon that individual.").

The opportunities to vote that will be lost during the first week of the early voting period for the March 2020 primary election cannot be remedied. *See Common Cause/Ga.*, 406 F. Supp. 2d at 1365-66. Voters who are prevented from voting by the elimination of the satellite early voting locations often are not able to

utilize other opportunities to vote because of inflexible work schedules, travel, illness, lack of transportation, or a fundamental distrust of absentee voting in Gwinnett County. Butler Decl. ¶¶ 11, 13-15, Poole Decl. ¶¶ 9-13.

### E. Balance of Hardships Favors Plaintiffs

The balance of hardships clearly weighs in favor of Plaintiffs and in favor of granting the requested relief herein. The requested relief will not subject Gwinnett County to any unreasonable hardship. County officials have already admitted that the funding is available. While there may be some minor administrative inconvenience in hiring the necessary poll workers and opening satellite locations earlier, that is not sufficient to force Gwinnett County voters who have done nothing wrong to have to wait for hours outdoors and risk being turned away during the first week of early voting. *Scott*, 215 F. Supp. 3d at 1258 (concluding "[t]his case pits the fundamental right to vote against administrative convenience" and "it would be nonsensical to prioritize [Florida's registration] deadlines over the right to vote"); *see also League of Women Voters*, 314 F. Supp. 3d at 1224

### F. The Public Interest Weighs Heavily in Plaintiffs' Favor

The public interest is best served by an early voting plan that allows every eligible citizen of Gwinnett County to vote, thereby preserving this fundamental right and fostering trust in the integrity of elections. *Jones v. Governor of Florida*,

2020 WL 829347, at *27 (Feb. 19, 2020) (holding the public "has every interest in ensuring that their peers who are eligible to vote are able to do so"); *League of Women Voters*, 314 F. Supp. 3d at 1224 ("Throwing up roadblocks in front of younger voters does not remotely serve the public interest. Abridging voting rights never does."); *Wesley*, 408 F.3d at 1355; *Ga. State Conf. of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1348–49 (N.D. Ga. 2015).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting their motion for a preliminary injunction and such further relief as it deems just and proper.

Dated: February 27, 2020 Respectfully submitted,

**Jennifer Dempsey**
Georgia Bar No. 217536
Attorney for Plaintiffs
Bryan Cave Leighton Paisner LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3488
Telephone: (404) 572-6600
Email: jennifer.dempsey@bclplaw.com

**/s/ Julia Ost**
Julia Fenwick Ost

Georgia Bar No. 940532
E-Mail: julia.ost@bclplaw.com
Bryan Cave Leighton Paisner LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3488
Telephone: (404) 572-6600

**Ezra Rosenberg**
Attorney for Plaintiffs
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
Email: erosenberg@lawyerscommittee.org

**Julie Houk**
Attorney for Plaintiffs
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8391
Email: jhouk@lawyerscommittee.org

**John Powers**
Attorney for Plaintiffs
*Pro hac vice* application forthcoming
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8389
Email: jpowers@lawyerscommittee.org

*Counsel for Plaintiffs*

**LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I certify that this pleading has been prepared with Times New Roman font, 14 point, as approved by the Court in L.R. 5.1(C), N.D. Ga.

*/s/ Jennifer B. Dempsey*

Jennifer B. Dempsey
Georgia Bar No. 217536
Julia Fenwick Ost
Georgia Bar No. 940532
E-Mail: julia.ost@bclplaw.com
Bryan Cave Leighton Paisner LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3488
Telephone: (404) 572-6600
Email: Jennifer.Dempsey@bclplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of February 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

*/s/ Jennifer B. Dempsey*
Jennifer B. Dempsey